[Cite as *State v. Koczwara*, 2014-Ohio-1946.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    13 MA 149 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JEFFREY KOCZWARA, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from County Court No.
                                   2, Case No. 13TRC433.


JUDGMENT:                          Affirmed.


APPEARANCES:
For Plaintiff-Appellee:            Attorney Paul Gains
                                   Prosecuting Attorney
                                   Attorney Ralph Rivera
                                   Assistant Prosecuting Attorney
                                   21 West Boardman Street, 6th Floor
                                   Youngstown, Ohio  44503


For Defendant-Appellant:           Attorney Edward Czopur
                                   42 North Phelps Street
                                   Youngstown, Ohio  44503


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                                   Dated:  May 1, 2014

VUKOVICH, J.

{¶1} Defendant-appellant Jeffrey Koczwara appeals the decision of County Court No. 2 which denied his motion to suppress. Appellant contends that the officer lacked reasonable suspicion to conduct field sobriety tests. His argument proceeds under the theory that the court can only view that evidence existing prior to the time he was asked to step out of the vehicle. However, it is well-established that an officer can ask any lawfully stopped driver to alight from the vehicle during the traffic stop without having any justification for doing so, and it is also well-established that an officer's subjective motivations do not invalidate a constitutionally permissible stop and its components.

{¶2} As an officer is permitted to order a driver out, the fact that the officer asked the driver out with a desire to conduct field sobriety tests (at a point when he allegedly did not yet have reasonable suspicion of OVI) does not invalidate the order to alight from the vehicle. Thus, appellant's imbalance and instability as he alighted from the vehicle can be considered in the evaluation of whether there existed reasonable suspicion to conduct field sobriety tests. Adding this to the suspicion the officer already possessed, there existed reasonable suspicion to conduct field sobriety tests. For the following reasons, the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

{¶3} On February 12, 2013, appellant was ticketed for speeding and OVI by a Boardman Police officer. He filed a motion to suppress any statements and all testing (including a .236 breath test), arguing in pertinent part that the officer lacked reasonable suspicion to conduct field sobriety tests. The state presented the officer's testimony at a suppression hearing. According to that testimony, the officer was traveling on Glenwood Avenue at 2:14 a.m., when he noticed that appellant's approaching vehicle was speeding at a rate of 49 miles per hour in a 35 mile per hour zone. (Tr. 8). The officer turned around and initiated a traffic stop. (Tr. 9). He approached appellant's vehicle with his flashlight out and had to knock on the window to prompt appellant to roll it down. (Tr. 10). Appellant was informed that he was stopped for speeding.

**{¶4}** The officer testified that appellant was confused, explaining, "he had to look at me several times." (Tr. 10). The officer had to advise appellant to retrieve his license and insurance card, at which point appellant removed his license from his back pocket. (Tr. 10, 43). Appellant sorted through his cards several times, dropping a credit card on this lap, which the officer took as a sign of further confusion. (Tr. 11). When appellant produced his license, he stopped looking through his documents, so that the officer had to remind appellant again that he needed his proof of insurance, which the officer found unusual. (Tr. 43-44). Appellant then looked in the glove compartment and eventually produced an expired insurance card. (Tr. 12, 48).

**{¶5}** As he was at the driver's side of the car getting appellant's information, the officer asked appellant where he was coming from, and appellant responded that he had been at Camelot Lanes. (Tr. 28-29). During this time, the officer noticed an odor of alcohol emitting from the vehicle (and no one else was in the vehicle). (Tr. 10-11). The officer stepped to the back of his vehicle where his training officer was standing and advised that he believed the driver may be intoxicated. (Tr. 11-12). (It was pointed out that the officer just started working for that police department weeks prior and had been a police officer for less than a year.) The officer then requested that appellant exit the vehicle as he wished to conduct field sobriety tests. (Tr. 12).

**{¶6}** As appellant exited the vehicle, he "had to use the door to balance." Specifically, "he leaned up against the door and had to use the door jamb to balance himself upright while exiting." (Tr. 45). The officer expressed that had appellant not braced himself in that manner, "I believe he possibly would have fallen into the roadway due to immediate lack of balance." (Tr. 45). When the officer asked appellant if he had any medical problems, he noticed that appellant had slurred speech. (Tr. 45-46).

**{¶7}** The officer's further observations of red, bloodshot, and glassy eyes and the pinpointing of the odor of alcohol as coming from appellant's person (as opposed to the vehicle) did not occur until some unspecified time after appellant alighted from the vehicle. (Tr. 46-47). The defense urged that the only permissible

evidence to be utilized in evaluating reasonable suspicion for field sobriety testing was that existing prior to appellant being asked to exit the vehicle.

{¶8}  The trial court denied the motion to suppress.  Appellant thereafter pled no contest to OVI.  The within timely appeal followed.

### ASSIGNMENT OF ERROR

{¶9}  Appellant's sole assignment of error provides:

{¶10}  "The trial court erred by denying Appellant's motion to suppress as the officer lacked reasonable suspicion to investigate for OVI against Appellant's Fourth Amendment Rights."

{¶11}  Appellant points to the non-comprehensive list that courts can employ to evaluate reasonable suspicion to administer field sobriety tests.  In *Reed*, we noted the following factors as set forth in an Eleventh District case:  (1) the time and day (noting that a Friday or Saturday night may weigh differently than a weekday morning for instance); (2) the location of the stop (such as near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (such as speeding, weaving, or unusual braking); (4) any cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed); (6) speech impairments (slurring, overly deliberate); (7) the odor of alcohol coming from the interior of the car (with emanation from person or breath being more significant); (8) the intensity of that odor (very strong, strong, moderate, slight); (10) indicators of a lack of coordination (dropping keys, falling over, fumbling for a wallet); and (11) the suspect's admission of alcohol consumption (including the number of drinks and the amount of time in which they were consumed, if given).  *State v. Reed*, 7th Dist. No. 05BE31, 2006-Ohio-7075, ¶ 10-11, citing *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (1998), fn.2 (collecting these factors upon a canvassing of multiple cases).

{¶12}  Appellant urges that his case is comparable to our *Reed* case and the Second District's *Dixon* case cited therein.  In *Reed*, this court concluded that there was no justification for administering field sobriety tests based merely upon a slight odor of alcohol, red and glassy eyes, a time of 2:20 a.m., and an admission that

defendant had two beers. *Reed*, 7th Dist. No. 05BE31 at ¶ 2-3, 13 (stopped for loud exhaust and too much tint on windows). In *Dixon*, the Second District concluded that there was no reasonable suspicion to administer field sobriety tests based upon a time of 2:20 a.m., glassy and bloodshot eyes, an unspecified odor of alcohol about the person, and an admission to consuming one or two beers. *State v. Dixon*, 2d Dist. No. 2000-CA-30 (Dec. 1, 2000). The *Dixon* court stated: "Perhaps one day it will be illegal to drink and drive. That is not the present state of the law, however." *Id.* In other words, alcohol consumption is not tantamount to being under the influence of alcohol (or driving with a prohibited concentration).

**{¶13}** Appellant urges that the list of factors weighs in his favor. He suggests that the only evidence to be considered is 2:14 a.m. (but a Tuesday), odor of alcohol from vehicle (without descriptor of strong or pervasive), speeding (but not erratic driving), and fumbling (that is urged to be understandable since it was reasonable to be nervous especially since he did not have his current insurance card). The state adds to the list: appellant's apparent confusion, his need to be prompted to provide his license and insurance card, his need to be reminded that he was looking for his insurance card, his statement that he was coming from Camelot Lanes, the balance issue as he alighted from the car, and other facts which appellant believes are not pertinent because they occurred after he was asked to step out of the car.

**{¶14}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on the motion, the trial court was the fact-finder and was thus in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). We thus accept the trial court's factual determinations that are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583 (1982). We then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

**{¶15}** Upon a lawful traffic stop, an officer must have reasonable suspicion of OVI before administering field sobriety tests. *State v. Keene,* 7th Dist. No. 08MA95, 2009-Ohio-1201, ¶ 12; *State v. Wilson*, 7th Dist. No. 01CA241, 2003-Ohio-1070, ¶ 17. The reasonable suspicion test looks at the "specific and articulable facts" provided by the officer and any rational inferences to be derived from those facts. *See Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See also State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 19 (the test is based upon a collection of factors, not the individual factors themselves).

**{¶16}** An inchoate hunch or unparticularized suspicion about criminal activity is not sufficient, but the suspicion required need not rise to the level of probable cause for arrest. *Terry*, 392 U.S. at 27. We have also stated that an officer need not artfully articulate his justifications as we view the evidence in the record regarding the specific facts the officer stated that he had before him. *State v. Lockett*, 7th Dist. No. 12CO13, 2013-Ohio-896, ¶ 30; *State v. Whitfield*, 7th Dist. No. 99CA111 (Nov. 1, 2000). The totality of the circumstances are evaluated to ascertain whether there was reasonable suspicion to believe appellant was intoxicated in order to detain him for field sobriety testing. *See Wilson*, 7th Dist. No. 01CA241 at ¶ 17.

**{¶17}** Although courts sometimes mention that an officer must have reasonable suspicion to remove a person from a car in order to conduct field sobriety tests, this reference to removal from the vehicle is not an accurate portrayal of the state of the law. As aforementioned, the administration of field sobriety tests must be justified by reasonable suspicion of OVI. *Reed*, 7th Dist. No. 05BE31 at ¶ 10, 27 (speaking of reasonable suspicion to detain and conduct field sobriety test, not to remove from vehicle). *However, the removal from the vehicle is not subject to this scrutiny.* (At least where the removal is initiated in the course of the traffic ticket, rather than after the ticketing process is complete). It is well-established that an officer can ask a person to alight from a vehicle during a lawful traffic stop without having reasonable suspicion of any further criminal activity. This is known as a *Mimms* order.

**{¶18}** The United States Supreme Court has stated that asking a lawfully stopped motorist to exit his vehicle is a de minimis intrusion that does not even rise to the level of a "petty indignity," finding that such a mere inconvenience cannot outweigh all of the legitimate concerns for officer safety, which the officer need not express or fear in a particular case. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.* at fn. 6 (where defendant was stopped for expired license plate).

**{¶19}** If reasonable suspicion thereafter arises (from acts of the motorist while alighting or the officer's better observation of the motorist), an officer can proceed with other investigatory steps that require reasonable suspicion such as the pat-down in *Mimms* (or field sobriety tests in this case). *See Mimms*, 434 U.S. at 111-112 (where officer ordered driver out of car without reasonable suspicion beyond the stop itself and then viewed bulge in jacket resulting in reasonable suspicion for pat down). We note that these rules even apply to passengers. *Maryland v. Wilson*, 519 U.S. 408, 413-415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (even though reasonable suspicion for the traffic stop itself is only attributable to the driver, passengers can be ordered out for no reason).

**{¶20}** The Ohio Supreme Court has agreed with the rationale in *Mimms* and explained that *Mimms* dispenses with the requirement that the officer possess reasonable suspicion of criminal activity before he orders the driver out of an already lawfully stopped vehicle. *State v. Evans*, 67 Ohio St.3d 405, 407-408, 618 N.E.2d 162 (1993) (stop for burned out headlight). A *Mimms* order is not a stop or seizure separate and distinct from the original traffic stop and "does not have to be justified by any constitutional quantum of suspicion." *Id.* at 408.

**{¶21}** "Accordingly, the ordering of defendant to get out of his car was proper even if the officers were unable to articulate a reasonable suspicion which prompted this action." *Id.* *See also State v. Lozada*, 92 Ohio St.3d 74, 81, 748 N.E.2d 520

(2001) (officer can order driver of a lawfully stopped car and the passengers out of vehicle regardless of any supporting reasons); *State v. Robinette*, 80 Ohio St.3d 234, 239, 68 N.E.2d 762 (1997) (instruction for speeding motorist to exit vehicle was justified under *Mimms* because it was a traffic stop; and then addressing continued detention after stop was over). The officer's ability to conduct a face-to-face confrontation during the ticketing process is protected over the defendant's ability to remain in his car. *See Lozada*, 92 Ohio St.3d at 81, citing *Mimms*, 434 U.S. at 110.

**{¶22}** Moreover, it is also well-established an officer's ulterior motives do not invalidate otherwise permissible police conduct under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Robinette*, 80 Ohio St.3d 234, 239, 685 N.E.2d 762 (1997) (subjective motivation for continuing a detention is irrelevant). "Thus, the question whether a Fourth Amendment violation occurred in this case depends upon an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind." *Dayton v. Erickson*, 76 Ohio St.3d 3, 6, 66 N.E.2d 1091 (1996). Accordingly, a traffic stop with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer "could" have performed the act complained of; pretext is irrelevant if the action complained of was permissible. *Id.* at 7, 11.

**{¶23}** Therefore, merely because an officer wants to perform field sobriety tests (that are allegedly premature) and that is why he asked someone to exit the vehicle, this does not invalidate the request to exit the vehicle because a request to exit a vehicle during a traffic stop is not subject to constitutional inquiry; it is merely an acceptable continuation of the original traffic stop. *See Evans*, 67 Ohio St.3d at 408 (removal from car is not a separate and distinct act from the traffic stop). As removal from a vehicle during a lawful traffic stop is permissible without any supporting suspicion for the removal itself, the officer's subjective motivation for ordering the defendant out of the lawfully stopped vehicle is not a consideration, just as it is not considered in determining the validity of the stop itself.

**{¶24}** Thus, events occurring upon exiting (before any field sobriety testing) are permissibly considered in the evaluation of whether there exists reasonable suspicion to administer field sobriety tests. *See, e.g., State v. Sarno*, 2d Dist. No. 25751, 2013-Ohio-5058, ¶ 17-20 (whether officer smelled marijuana before, during, or after the driver's removal from the vehicle was irrelevant because the *Mimms* order during a lawful traffic stop requires no reasonable suspicion and fact that officer admitted that he ordered the driver out to conduct field sobriety tests is irrelevant under *Whren* and *Erickson*); *State v. Kilbarger*, 4th Dist. No. 11CA23, 2012-Ohio-1521, ¶ 5, 16, 19 (where there was a proper traffic stop, officer can order driver out for no reason and driver's instability on exiting car and using door for support can be used in evaluation of whether there was reasonable suspicion for field sobriety test); *Village of Kirtland Hills v. Strogin*, 11th Dist. No. 2005-L-073, 2006-Ohio-1450, ¶ 17-19 (reasonable suspicion for field sobriety testing can arise after driver is ordered out, and it is irrelevant that officer already had subjective motivation to conduct field sobriety test when he ordered defendant out of vehicle); *State v. Clark*, 8th Dist. No. 83480, 2005-Ohio-1160, ¶ 13-14 (suggesting that even if defendant's placement of eyeglass case between seats would not cause reasonable officer to fear a weapon, officer needed no reason to order lawfully stopped driver to step out of vehicle under *Mimms*, so that officer's subsequent plain view discovery of crack pipe was valid)

**{¶25}** What this means here is that the officer's testimony about appellant presenting as though he could have fallen into the road had he not used the car door to keep himself upright is evidence to be utilized in the reasonable suspicion evaluation. We thus add this major instability indicator of intoxication to the end of the following list: 2:14 am, coming from Camelot Lanes, speeding at a rate of 49 miles per hour in a 35 miles per hour zone, conveying the impression of confusion at first encounter, having to be told to roll down the window and to produce license and insurance card, sorting through cards several times, dropping a card, finding only license and stopping search which prompted officer to remind him to look for his insurance card, an odor of alcohol from car that only contained a driver, and finally,

the instability and imbalance upon exiting the vehicle, conveying an impression that he would have fallen into the road without the use of the door for support.[1]

**{¶26}** Under the totality of the circumstances, there was reasonable suspicion to administer field sobriety tests which existed prior to the administration of the tests. (There is thus no need to rule on the issue of whether there was reasonable suspicion of OVI prior to the request to exit the vehicle.)

**{¶27}** Accordingly, appellant's sole assignment of error is overruled. For the foregoing reasons, the judgment of the trial court is affirmed.

Waite, J., concurs.
DeGenaro, P.J., concurs.

---

[1] We note that the testimony was so focused on whether certain observations occurred before or after the request to alight from the vehicle, that the state failed to elicit whether the officer observed other indicators prior to or during the field sobriety testing, such as the condition of appellant's eyes and the discovery that it was appellant himself from which the odor of alcohol was emanating. We also note that the officer stated that he noticed appellant's slurred speech when he asked if appellant had medical conditions; this occurred after appellant exited and may have occurred prior to field sobriety testing. As this was unclear, we decline from including it in our evaluation.