[Cite as *State v. Bartholomew*, 2020-Ohio-4611.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA29 |
| | : | |
| vs. | : | |
| | : | DECISION AND |
| CHRISTOPHER J. | : | JUDGMENT ENTRY |
| BARTHOLOMEW, | : | |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Steven S. Nolder, Scott & Nolder Co., LPA, Columbus, Ohio, for Appellant.

Judy C. Wolford, Pickaway County Prosecutor, and Heather MJ Carter, Assistant Pickaway County Prosecutor, Circleville, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} This is an appeal from a Pickaway County Common Pleas Court order denying Appellant, Christopher Bartholomew's, motion to suppress and the subsequent judgment of conviction and sentence issued by the court. After the trial court denied his motion to suppress, Bartholomew pleaded no contest to six counts of pandering obscenity involving a minor, all fourth-degree felonies in violation of R.C. 2907.321(A)(5). Bartholomew also pleaded no contest to one count of importuning, a fifth-degree felony in violation of R.C. 2907.07(D)(1). On appeal,

Bartholomew contends 1) that the trial court erred by denying his motion to suppress; and 2) that the trial court erred by imprisoning him for fourth- and fifth degree felonies. For the reasons that follow, we affirm the trial court's denial of Bartholomew's motion to suppress and also affirm the final judgment of the trial court.

FACTS

{¶2} This matter began on January 18, 2019, when Christopher Bartholomew was stopped while driving, arrested, and charged with criminal child enticement in violation of R.C. 2905.05(A). A review of the record reveals that the Circleville Middle School principal received a tip that a thirteen-year-old female student would be picked up in the school pick-up line that day by a twenty-six-year-old male, without her parents' permission, and with a plan to have sex. As a result, Officer McIntyre, who was employed by the Circleville Police Department as the Circleville City Schools Resource Officer, positioned himself in the school parking lot during pick-up. While there, he observed a black SUV leaving the school parking lot a high rate of speed, passing other vehicles and squealing its tires. Officer McIntyre caught up with the vehicle, ran the tag and initiated a traffic stop based on the driver's erratic driving. Thereafter, dispatch informed Officer McIntyre that the driver was a twenty-six-year-old male named Christopher Bartholomew. Bartholomew stated he was at the school to pick up his

buddy's child.  Believing Bartholomew fit the description of the male contained in the tip, Officer McIntyre left Bartholomew with backup that had arrived, and he returned to the school to further investigate.

{¶3} While at the school, he spoke with administration, the thirteen-year-old female student at issue and her parents.  He also reviewed the student's phone, which contained snapchat messages between the student and Bartholomew.  Further, the student told Officer McIntyre that Bartholomew was there to pick her up and the two intended to have sex.  After discussing potential charges with another deputy, as well as a sergeant, Officer McIntyre requested that Officer Kory Yoder (who was attending Bartholomew at the traffic stop location) place Bartholomew under arrest and confiscate his phone, based upon his belief that a felony crime was involved which most closely aligned with the elements of criminal child enticement.  Further, two phones were actually taken from Bartholomew and placed in airplane mode in order to preserve evidence for later investigation.

{¶4} As set forth above, Bartholomew was initially charged with criminal child enticement in violation of R.C. 2905.05(A).  However, after a warrant was obtained to search the contents of his two mobile phones and further investigation was conducted, a twenty-six-count felony indictment was filed charging him with eleven counts of pandering obscenity involving a minor, all fourth-degree felonies

in violation of R.C. 2907.321, eleven counts of illegal use of a minor in nudity-oriented material, all fifth-degree felonies in violation of R.C. 2907.323(A)(3), and one count of importuning, a fifth-degree felony in violation of R.C. 2907.07(D)(1). The original criminal child enticement was dismissed in favor of pursuing the felony charges.

{¶5} Appellant pleaded not guilty to the charges contained in the indictment and filed a motion to suppress evidence on March 8, 2019. A suppression hearing was held in which the State presented three witnesses. Officer McIntyre testified regarding his involvement in the case. Officer Yoder testified regarding his role in providing backup at the traffic stop and in effectuating the arrest of Bartholomew. Further, Detective Dan Maher, a detective with the Internet Crimes Against Children Task Force, testified regarding his forensic investigation of Bartholomew's mobile phones. The trial court ultimately denied the motion by a written decision and entry dated April 5, 2019.

{¶6} Bartholomew thereafter entered into plea negotiations with the State, which resulted in him pleading guilty to six counts of pandering obscenity involving a minor and one count of importuning, in exchange for dismissal of the remaining counts of the indictment. The trial court sentenced Bartholomew to twelve-month prison terms on each count of pandering obscenity involving a minor, to be served consecutively to one another, as well as a twelve-month prison

term for importuning, to be served concurrently to the other prison terms, resulting

in an aggregate term of six years. Bartholomew now brings his timely appeal,

setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

I.      "THE TRIAL COURT ERRED BY DENYING APPELLANT'S
        MOTION TO SUPRESS."

II.     "THE TRIAL COURT ERRED BY IMPRISONING APPELLANT
        FOR FOURTH AND FIFTH DEGREE FELONY CONVICTIONS."

ASSIGNMENT OF ERROR I

{¶7} In his first assignment of error, Bartholomew contends the trial court

erred by denying his motion to suppress. More specifically, he contends that

because the criminal child enticement statute, R.C. 2905.05(A), had been

previously deemed unconstitutionally overbroad by the Supreme Court of Ohio in

*State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156 (2014), his

arrest based upon the statute was invalid. Bartholomew claims there are two

questions presented under this assignment of error. First, he questions what the

consequence is for his arrest based upon an alleged violation of an unconstitutional

statute. Second, he questions what impact this arrest had on evidence subsequently

secured by the officers. We begin by considering the standard of review to be

applied when analyzing the denial of a motion to suppress.

## Standard of Review

{¶8} In general, "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Supreme Court of Ohio has explained as follows:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Burnside* at ¶ 8.

## Legal Analysis

{¶9} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. The Supreme Court of Ohio has held that " in felony cases, Article I, Section 14 of the Ohio Constitution provides the same protections as the Fourth Amendment to the United States Constitution." *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 18, citing State v. Jones, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12. "This constitutional guarantee is

protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure." *State v. Petty*, 4th Dist. Washington Nos. 18CA26, 134 N.E.3d 222, 2019-Ohio-4241, ¶ 11.

{¶10} " '[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *State v. Conley*, 4th Dist. Adams No. 19CA1091, 2019-Ohio-4172, ¶ 17, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Once the defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *Conley*, *supra*, at ¶ 17, citing *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 18. In this case, there is no dispute that Bartholomew was stopped and had his cell phones seized by the State without a warrant.

The Initial Stop

{¶11} The police encounter at issue began with an investigatory stop. Investigatory stops "must be supported by a reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation." *Petty*, *supra*, at ¶ 12. In *Petty*, we recently explained as follows:

> "To justify a traffic stop based upon reasonable suspicion, the
> officer must be able to articulate specific facts that would warrant

a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation." *State v. Taylor*, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 18 (4th Dist.). The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop. *Id.* Moreover, a police officer may stop the driver of a vehicle after observing even a de minimis violation of traffic laws. "[A] traffic stop with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer 'could' have performed the act complained of; pretext is irrelevant if the action complained of was permissible." *See State v. Koczwara*, 7th Dist. Mahoning No. 13MA149, 2014-Ohio-1946, ¶ 22 * * *.

(Citations omitted.) *Id.* at ¶ 12 -13.

{¶12} Here, the trial court found that the initial stop was justified based upon testimony during the suppression hearing that Officer McIntyre observed Bartholomew speeding and passing other vehicles in the school parking lot, which the officer described as erratic driving that included the squealing of tires. Based upon this testimony, we cannot conclude the trial court erred in determining the initial stop was justified as even a de minimis traffic violation provides the required reasonable suspicion to initiate a stop. Additionally, taking into consideration the information that the officer had received from the school principal, the record before us indicates he had reasonable, articulable suspicion that Bartholomew had already or was about to commit a crime. Thus, the trial

court's finding that the initial traffic stop was supported by reasonable suspicion is supported by competent, credible evidence.

{¶13} Furthermore, " '[i]f a law enforcement officer, during a valid investigative stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." ' " *State v. Nolen*, 4th Dist. Scioto No. 19CA3873, 2020-Ohio-118, ¶ 23, quoting *State v. Rose*, 4th Dist. Highland No. 06CA5, 2006-Ohio-5292, ¶ 17, in turn quoting *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997). In the present case, although the initial stop was valid and justified based upon a traffic violation, another level of concern existed based upon the report received from the school principal. Once Bartholomew was stopped and it was determined he matched the description of the male that was supposed to be picking up the minor from school, Officer McIntyre detained him while he conducted further investigations, which involved speaking to the minor and her parents, as well as examining messages between the minor and Bartholomew on the minor's cell phone. It was this portion of the investigation that led to Bartholomew's arrest, the seizure of his cell phones, and the subsequent search of the contents of his phones pursuant to a warrant. It is this search and seizure incident to his arrest that Bartholomew primarily challenges on appeal.

The Arrest

{¶14} One exception to the warrant requirement is a search conducted incident to a lawful arrest. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 15. "For a search to be conducted pursuant to the search incident to arrest exception, the underlying arrest must be lawful." *State v. Whipple*, 12th Dist. Clermont No. CA2016-06-036, 2017-Ohio-1094, ¶ 15, citing *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 24, in turn citing *Chimel v. California*, 395 U.S. 752, 753, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). "This exception has two rationales: officer safety and 'safeguarding evidence that the arrestee might conceal or destroy.' " *Leak* at ¶ 16, quoting *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 182, citing *Arizona v. Gant*, 556 U.S. 332, 338-339, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

{¶15} The State contends that Officer McIntyre made a reasonable "mistake of law" when he relied on R.C. 2905.05(A) when arresting and charging Bartholomew, but argues that suppression of the evidence at issue is not the proper remedy, relying on *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530 (2014). In *Heien*, the United States Supreme Court held that reasonable mistakes of law, like reasonable mistakes of fact, are compatible with the concept of reasonable suspicion and that reasonable suspicion to support an investigatory stop may rest on a reasonable mistake of law. *Id.* at 536. Thus, the Court opined that application of the exclusionary rule was not necessarily required in the context of reasonable

mistakes of law. *Id.* at 538 (discussing *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). The State alternatively argues that the exigent circumstances exception to the warrant requirement applied with respect to the seizure of Bartholomew's cell phones, citing the potential for destruction of evidence.

{¶16} Bartholomew's argument that his arrest was based upon a statute that had been previously declared unconstitutional essentially argues that he was arrested without probable cause. "A warrantless arrest is constitutionally valid when an arresting officer has probable cause to believe that an individual has committed a crime." *State v. Richards*, 4th Dist. Athens No. 14CA1, 2015-Ohio-669, ¶ 26. The existence of probable cause is a legal question subject to de novo review. *State v. Williams*, 4th Dist. Ross No. 10CA3162, 2011-Ohio-763, ¶ 16. "Probable cause for a warrantless arrest requires that the arresting officer, at the time of the arrest, possess sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed." *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 39. In determining whether probable cause existed, courts must consider " 'the totality of the facts and circumstances, including a police officer's specialized knowledge.' " *Williams* at ¶ 16, quoting *State v. Hansard*, 4th Dist. Scioto No. 07CA3177, 2008-Ohio-3349, ¶ 35.

{¶17} As set forth above, when Bartholomew was arrested on January 18, 2019, he was charged with criminal child enticement, a first-degree misdemeanor in violation of R.C. 2905.05(A), which provides as follows:

> (A) No person, by any means and without privilege to do so, shall knowingly solicit, coax, entice, or lure any child under fourteen years of age to accompany the person in any manner, including entering into any vehicle or onto any vessel, whether or not the offender knows the age of the child, if both of the following apply:
> (1) The actor does not have the express or implied permission of the parent, guardian, or other legal custodian of the child in undertaking the activity.
> (2) The actor is not a law enforcement officer, medic, firefighter, or other person who regularly provides emergency services, and is not an employee or agent of, or a volunteer acting under the direction of, any board of education, or the actor is any of such persons, but, at the time the actor undertakes the activity, the actor is not acting within the scope of the actor's lawful duties in that capacity.[1]

The Supreme Court of Ohio declared section (A) of the criminal child enticement statute to be unconstitutional in *State v. Romage*, *supra*. Specifically, the Court determined that R.C. 2905.05(A) was overbroad. *Id.* at syllabus ("Ohio's child-enticement statute, R.C. 2905.05(A), is unconstitutionally overbroad because it sweeps within its prohibitions a significant amount of constitutionally protected activity."). Because of this, Bartholomew contends that the statute is void ab initio and "ceased to exist in the code book." He further argues that "[a]fter *Romage*,

---

[1] This charge was later dismissed, but not before Bartholomew was indicted for eleven counts of pandering obscenity involving a minor, eleven counts of illegally using a minor in nudity-oriented material or performances, and one count of importuning.

this statute was void ab initio from the date of its enactment and as a result, law enforcement could not rely on it on January 18, 2019 to arrest [him]."[2]  He goes on to argue that "law enforcement officers were prohibited from taking any action, including arresting [him], securing a statement, and seizing evidence, under the color of that statute."  Bartholomew further argues that it would have been impossible for law enforcement to have developed probable cause to arrest based upon violation of a statute that ceased to exist.

{¶17} Contrary to Bartholomew's arguments, a review of the legislative history of Ohio's criminal child enticement statute reveals that its status at the time of Bartholomew's arrest was not completely settled or decided.  The *State v. Romage* decision was issued on March 6, 2014 and involved an arrest for criminal child enticement that occurred on October 18, 2010.  *Romage* at ¶ 2.  Thus, the applicable version of the criminal child enticement statute that applied in *Romage* had an effective date of  January 1, 2008.  The Court noted in its decision, however, that the statute had been amended on July 11, 2013, to add a new subsection C, but noted "[t]he language in R.C. 2905.05(A) remains unchanged." *Romage* at fn. 1.  Unfortunately, the legislature failed to repeal the unconstitutional

---

[2] *But see Heien v. North Carolina, supra*, at 538 (where the Court discussed its prior holding in *Michigan v. DeFillippo, supra*, which addressed the validity of an arrest made under a criminal law later declared unconstitutional.)  In *DeFillipo*, the Court ultimately upheld an arrest based upon violation of an ordinance that was later declared unconstitutional, finding that at the time the officers made the arrest the ordinance was presumptively valid.  *Heien* at 538.  We believe this particular portion of the Court's reasoning in *Heien* and *DeFillipo* is difficult to reconcile with Bartholomew's void *ab initio* argument.

portion of the statute after the *Romage* decision was issued. Instead, it enacted a new version of the statute on September 14, 2016, approximately two and one-half years after the *Romage* decision was issued. Further, it appears that it failed to change the problematic language that the *Romage* Court deemed overbroad. Nonetheless, it remained listed as a current and unrepealed statute in the Ohio Revised Code. It was the September 14, 2016, version of the statute that was in effect at the time Bartholomew was arrested. The current and applicable version of R.C. 2905.05(A) was not again formally recognized as unconstitutional until nearly a year later, when the Eighth District Court of Appeals issued a decision finding that a defendant's "due process rights were violated when he was prosecuted and convicted of violating a statute that was previously declared unconstitutional." *City of Parma v. Horky*, 2019-Ohio-4886, -- N.E.3d – , ¶ 15.

{¶18} Importantly, although it was determined Horky could not ultimately be prosecuted, convicted and sentenced for a violation of R.C. 2905.05(A), which had been previously deemed unconstitutional, the *Horky* court made no statement regarding whether a suspected violation of that statute could provide probable cause for arrest. This is an important distinction. Horky was arrested, tried, and convicted of a violation of R.C. 2905.05(A) and it required the issuance of an appellate decision to determine that the newly enacted version of R.C. 2905.05(A) still remained unconstitutional. Moreover, the *Horky* decision had not yet been

issued when Bartholomew was charged with a violation of R.C. 2905.05(A) under the current, post-*Romage*, version of the statute. Incidentally, despite the *Horky* decision, the 2016 version of the statute remains listed in the Ohio Revised Code and has still not been repealed as of time of the writing of this decision.

{¶19} In light of the foregoing, we believe Officer McIntyre reasonably concluded, based upon the totality of the circumstances at that time, that Bartholomew's conduct constituted a violation of R.C. 2905.05(A), and that the statute, which had been amended and reenacted after the issuance of the *Romage* decision, remained valid and actively listed in the Ohio Revised Code. As such, we conclude there was probable cause for Bartholomew's arrest and the seizure of his cell phones incident to his arrest, and we further conclude that the subsequent search thereof pursuant to the issuance of a warrant was valid. In light this reasoning, we do not reach the State's arguments that the officer's made a reasonable mistake of law, or that the exigent circumstances exception to the warrant requirement applied.

{¶20} Based upon the foregoing, we cannot conclude the trial court erred in denying Bartholomew's motion to suppress. Thus, Bartholomew's first assignment of error is overruled and his convictions are affirmed.

ASSIGNMENT OF ERROR II

{¶21} In his second assignment of error, Bartholomew contends that the trial court erred by imprisoning him for fourth- and fifth-degree felony convictions. He argues that the trial court failed to state that it had complied with R.C. 2929.13.(B)(1)(c) before sentencing him to prison terms. Bartholomew concedes the trial court was statutorily empowered to impose prison sentences for his convictions as they were sex offenses, however, he argues the trial court was still required to comply with R.C. 2929.13(B)(1)(c) before doing so. The State responds by arguing that there was a presumption of a prison term for the importuning conviction and that because the pandering obscenity convictions constituted sex offenses, they fell under an exception which rendered the R.C. 2929.13(B)(1)(c) inapplicable.

Standard of Review

{¶22} "R.C. 2953.08 provides for appeals based on felony sentencing guidelines." *State v. Grimmette*, 4th Dist. Scioto No. 18CA3830, 2019-Ohio-3576, ¶ 5. As explained in *Grimmette*, R.C. 2953.08(G)(2) specifically provides as follows:

> an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either "that the record does not support the sentencing court's findings" under the specified statutory provisions, or "the sentence is otherwise contrary to law."

*Id.*; citing *State v. Mitchell*, 4th Dist. Meigs No. 13CA13, 2015-Ohio-1132, ¶ 11;

*State v. Brewer*, 2012-Ohio-1903, 11 N.E.3d 317, ¶ 37 (4th Dist.).

Legal Analysis

{¶23} As set forth above, Bartholomew pleaded guilty to six counts of

pandering obscenity involving a minor, all fourth-degree felonies in violation of

R.C. 2907.321(A)(5), and one count of importuning, a fifth-degree felony in

violation of R.C. 2907.07(D)(1). In *State v. Grimmette*, *supra*, we explained as

follows with regard to the principles and purposes of felony sentencing:

> R.C. 2929.11 requires that courts sentencing felony offenders be guided by the overriding purposes of felony sentencing - to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. "To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11. R.C. 2929.12(A) limits a trial court's discretion and states "[U]nless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender has discretion to determine the most effective ways to comply with the purposes and principles set forth in section 2929.11 * * *." Thus, R.C. 2929.12 limits the discretion afforded the trial court in R.C. 2929.11. Additionally, R.C. 2929.13(A) also limits the trial court's sentencing discretion: "* * * unless a specific sanction is required to be imposed or is precluded from being imposed pursuant to law, a court * * * may impose any sanction * * * provided in sections 2929.14 to 2929.18 of the Revised Code."

*Grimmette* at ¶ 9.

{¶24} R.C. 2929.13 governs sentencing guidelines for various specific offenses and degrees of offenses. As further noted in *Grimmette*, "[o]n September 30, 2011, H.B. 86 went into effect and amended R.C. 2929.13(B)(1) to prohibit prison sentences for certain fourth-and fifth-degree felonies." *Grimmette* at ¶ 10. Thus, if certain criteria are met in section (B)(1)(a) of the statute, the trial court must sentence the offender to community control sanctions. R.C. 2929.13(B)(1)(a), as amended by H.B. 86, reads as follows:

> (a) *Except as provided in division (B)(1)(b) of this section*, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence, the court shall sentence the offender to a community control sanction of at least one year's duration *if all of the following apply*:
> (I) The offender previously has not been convicted of or pleaded guilty to a felony offense or to an offense.
> (ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.
> (iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.
> (iv) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed. (Emphasis added.)

"Thus, R.C. 2929.13(B)(1)(a) includes a presumption for community control if an offender is convicted of, or pleads guilty to, a felony of the fourth or fifth degree that is not an offense of violence." *Grimmette* at ¶ 11, citing *State v. Napier*, 12th

Dist. Clermont No. CA2016-04-022, 2017-Ohio-246, ¶ 44; *State v. Lilly*, 12th Dist.

Clermont Nos. CA2017-06-029, CA2017-06-030, 2018-Ohio-1014, ¶ 15.

{¶25} However, the presumption of a community control sanction is subject

to the exceptions listed in R.C. 2929.13(B)(1)(b).  *Grimmette* at ¶ 11, citing *State v.*

*Barnes*, 11th Dist. Trumbull No. 2012-T-0049, 2013-Ohio-1298, ¶ 16.  *See also*

*State v. Parker*, 8th Dist. Cuyahoga No. 104610, 2017-Ohio-4294, ¶ 7

("Application of R.C. 2929.13(B)(1)(a), however, is subject to R.C.

2929.13(B)(1)(b).").  R.C. 2929.13(B)(1)(b) provides as follows:

> (b) The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense *if any of the following apply*:
> (i) The offender committed the offense while having a firearm on or about the offender's person or under the offender's control.
> (ii) If the offense is a qualifying assault offense, the offender caused serious physical harm to another person while committing the offense, and, if the offense is not a qualifying assault offense, the offender caused physical harm to another person while committing the offense.
> (iii) The offender violated a term of the conditions of bond as set by the court.
> (iv) The court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, and the department, within the forty-five-day period specified in that division, did not provide the court with the name of, contact information for, and program details of any community control sanction of at least one year's duration that is available for persons sentenced by the court.
> (v) The offense is a sex offense that is a fourth or fifth degree felony violation of any provision of Chapter 2907 of the Revised Code.

(vi) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.

(vii) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.

(viii) The offender held a public office or position of trust, and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.

(ix) The offender committed the offense for hire or as part of an organized criminal activity.

(x) The offender at the time of the offense was serving, or the offender previously had served, a prison term.

(xii) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance. (Emphasis added.)

{¶26} Here, it clear from the record that the R.C. 2929.13(B)(1)(b)(v) exception applied as the fourth- and fifth-degree felony offenses at issue here are sex offenses in violation of a provision of Chapter 2907 of the Ohio Revised Code. *See State v. Grey*, 7th Dist. Columbiana No. 15CO0011, 2016-Ohio-3249, ¶ 15 (holding that it was within the trial court's discretion to sentence the defendant on each offense as they were both sex offenses in violation of Chapter 2907 of the Revised Code and noting that prison terms for fifth-degree felony sex offenses are statutorily authorized).  Bartholomew contends, however, that the trial court erred by failing to state that it had complied with R.C. 2929.13(B)(1)(c) before

sentencing him to prison terms for fourth- and fifth-degree felonies. The State argues that R.C. 2929.13(B)(1)(c) is inapplicable to the present case because Bartholomew was convicted of sex offenses in violation of Chapter 2907 of the Ohio Revised Code, which fall into an exception contained in R.C. 2929.13(B)(1)(b). For the following reasons, we agree with the State.

{¶27} R.C. 2929.13(B)(1)(b)(v) expressly excepts sex offenses committed in violation of R.C. 2907 of the Ohio Revised Code from the presumptive imposition of community control and instead provides that trial courts have discretion to impose prison terms for these offenses, without making any references to the requirements contained in R.C. 2929.13(B)(1)(c). R.C. 2929.13(B)(1)(c) provides as follows:

> (c) If a court that is sentencing an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense believes that no community control sanctions are available for its use that, if imposed on the offender, will adequately fulfill the overriding principles and purposes of sentencing, the court shall contact the department of rehabilitation and correction and ask the department to provide the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court. Not later than forty-five days after receipt of a request from a court under this division, the department shall provide the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court, if any. Upon making a request under this division that relates to a particular offender, a court shall defer sentencing of that offender until it receives from the

department the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court or for forty-five days, whichever is the earlier.

If the department provides the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court within the forty-five-day period specified in this division, the court shall impose upon the offender a community control sanction under division (B)(1)(a) of this section, except that the court may impose a prison term under division (B)(1)(b) of this section if a factor described in division (B)(1)(b)(i) or (ii) of this section applies. If the department does not provide the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court within the forty-five-day period specified in this division, the court may impose upon the offender a prison term under division (B)(1)(b)(iv) of this section. (Emphasis added).

{¶28} We initially conclude that the prison term imposed for the fifth-degree felony importuning conviction in violation of R.C. 2907.07(D)(1) was not contrary to law because R.C. 2907.07(F)(3) specifically provides that "a violation of division (B) or (D) of this section is a felony of the fifth degree on a first offense, and * * * there is a presumption that a prison term shall be imposed * * *." *See State v. Grey*, *supra*, at ¶ 17. Thus, there was no presumption of community control that the trial court had to overcome before imposing a prison term on the importuning count.

{¶29} Next, we reject Bartholomew's argument that the trial court was required not only to comply with, but also expressly state that it had complied

with, R.C. 2929.13(B)(1)(c), before imposing prison terms for each fourth-degree felony pandering obscenity involving a minor count.  A similar argument was raised in *State v. Lawson*, 2d Dist. Champaign No. 2017-CA-28, 2018-Ohio-1532.  In *Lawson*, the defendant argued that his sentences should be vacated because the trial court failed to comply with R.C. 2929.13(B)(1)(c) before imposing prison terms for aggravated drug possession and petty theft, where the defendant had a history of prior convictions as well as a drug abuse problem.  *Id*. at ¶ 15-16.  Lawson's prison sentences were upheld based upon the court's reasoning that community control sanctions would not adequately fulfill the principles and purposes of sentencing.  *Id*. at ¶ 16.  The *Lawson* court also determined that "[t]he fact of Lawson's prior convictions, in any event, gave the court 'discretion to impose a prison term' under R.C. 2929.13(B)(1)(b)(x)."  *Id.*, citing *State v. Robinson*, 2d Dist. Champaign No. 2012 CA 17, 2012-Ohio-4976, ¶ 22; *State v. Parker*, 8th Dist. Cuyahoga No. 104610, 2017-Ohio-4294, ¶ 6-10.  Like R.C. 2929.13(B)(1)(b)(x), which governs offenders that are serving or have served prior prison terms at the time they are being currently sentenced, R.C. 2929.13(B)(1)(b)(v) governs offenses that are sex offenses, and both are exceptions to the presumptive imposition of community control for fourth- and fifth-degree felonies.

{¶30} Here, we conclude that the trial court was not required to comply with all of the requirements of R.C. 2929.13(B)(1)(c) before imposing a prison terms upon Bartholomew because he was being sentenced for sex offenses which constitute an exception under R.C. 2929.13(B)(1)(b) to the presumption of community control contained in R.C. 2929.13(B)(1)(a). *See State v. Rodriguez*, 2017-Ohio-9130, 101 N.E.3d 1154, ¶ 27-29; *State v. Lawson*, *supra*, at ¶ 16; *State v. Grey*, *supra*, at ¶ 15; *State v. Parker*, *supra*, at ¶ 7. Nevertheless, the record before us indicates that the trial court did substantially comply with R.C. 2929.13(B)(1)(c). For example, the trial court stated that it had reviewed a pre-sentence investigation as well as a sentencing memorandum submitted by defense counsel prior to sentencing. In that sentencing memorandum, defense counsel claimed there was a presumption in favor of community control for the offenses at issue and directed the court's attention to the sentencing guidelines contained in R.C. 2929.13.

{¶31} Furthermore, the trial court noted during the sentencing hearing that the only offense that contained a presumption of prison was the importuning count. The trial court further noted, prior to imposing sentence, the seriousness of Bartholomew's conduct and the fact that it involved a minor. The trial court also made consecutive sentence findings, including findings that consecutive prison terms were necessary to protect the public and adequately punish Bartholomew.

These findings cannot be reconciled with the findings necessary for the imposition of community control. Based upon the record before us, we cannot conclude that the trial court erred in imposing prison sentences instead of community control terms or that Bartholomew's sentence is otherwise contrary to law. Thus, we find no merit to his second assignment of error and it is overruled.

## Conclusion

{¶32} Having found no merit in either of the assignments of error raised by Bartholomew, they are both overruled. Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. concurs in Judgment and Opinion as to A/E II, and concurs in Judgment only as to A/E I.

Hess, J., concurs in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**